[Argued February 2, 1893; decided March 7, 1893.]

## J. H. COVENTON ET AL. *v.* F. A. SEUFERT, ET AL.

[S. C. 32 Pac. Rep. 508.]

1. EASEMENT — PRESCRIPTIVE RIGHT.—An uninterrupted use and enjoyment of an easement in a particular way for the statutory period affords a conclusive presumption that the person who used it had a right so to do, provided the use be not by authority of law, or by agreement with the owner of the inheritance: *Tolman* v. *Casey*, 15 Or. 83, cited.

2. IDEM — PERMISSIVE USE — PAROL GRANT.*— An easement cannot be granted by parol, but that it originated in parol permission does not affect the prescriptive title if it has been used for the requisite period under a claim of right.

3. ADVERSE POSSESSION — OFFER TO PURCHASE.—An offer to purchase, made after the statute has fully run, will not bar the claim of adverse possession, unless the relation of landlord and tenant, or of vendor and vendee under a contract of purchase, once existed between the parties.

4. DEED — APPURTENANCES.—An easement such as a ditch passes under the general term of appurtenances in a deed, and need not be specially mentioned: *Simmons* v. *Winters*, 21 Or. 44, approved.

Wasco County: LIONEL R. WEBSTER, Judge.

This suit was brought by J. H. Coventon and Cincinnati, his wife, against F. A. Seufert, Anna Seufert, and

* NOTE.— See cases of *Lawrence* v. *Springer*, 31 Am. St. Rep. 712, and *Pitzman* v. *Boyce*, 33 Am. St. Rep. 537, for an instructive discussion of Parol Licenses: Their Nature and Revocation.— REPORTER.

T. J. Seufert to enjoin them from diverting the waters of an irrigating ditch.

The evidence shows that the land owned by the defendants, across which the ditch runs, was selected by the state of Oregon, July 18, 1864, under the provisions of the act of congress, approved September 4, 1841, and commonly known as the "Internal Improvement Grant." This selection was approved by the commissioner of the general land office, and by the secretary of the interior, August 12, 1868. The state of Oregon, on December 16, 1872, granted this land to one J. Jackson, through whom these defendants claim title by mesne conveyances.

The plaintiffs, as tenants in common, are the owners of, and in the peaceable and exclusive possession of, certain real property described in the complaint. About 1863 two Italians settled upon a tract of vacant land now owned by the plaintiffs, and dug a ditch from Five Mile Creek across the lands now owned by the defendants, and conducted the waters of said creek through this ditch to their land claim, for the purpose of irrigating the same. These Italians continued to occupy this tract of land, and to use the ditch for said purpose, until November 10, 1866, when they sold their claim, and surrendered the possession thereof, to W. G. Simpson, who, on June 10, 1872, secured the legal title thereto. Mr. Simpson continued to occupy this land, and to use the ditch, until 1873, when he died. Thereafter his widow, by consent of his heirs, occupied the place and used the ditch till 1880, when she died. The plaintiff C. Coventon is the daughter of W. G. Simpson, and she and her husband have secured the legal title from the heirs, and have occupied the place and used the ditch since Mrs. Simpson's death. The plaintiffs claim to be the legal owners of the ditch, and to possess the right to divert thirty-six inches of water from said creek, and conduct the same to their land, as an appurtenance thereto, by reason of an alleged uninterrupted possession and use thereof by themselves and

their predecessors and grantors for a period of more than twenty-two years; while the defendants claim that such use and possession has been by the license and indulgence of their predecessors and grantors.

The cause was referred to A. R. Thompson to take and report the testimony, and upon the hearing thereof, the court found that plaintiffs were the owners and possessors of said water ditch, and that they are entitled to divert thirty-six inches of water from Five Mile Creek, and to carry the same through said ditch to their premises, from the first day of May until the first day of August of each year, and fifteen inches for the remainder of the year; said thirty-six inches to be calculated according to the natural flow with a fall of one inch to the rod, without pressure; and decreed that the defendants be enjoined and restrained from diverting or preventing the flow of that quantity through said ditch, but provided that defendants might use said ditch, and appropriate for their premises the excess over that amount of water, upon condition that they do not interfere with the rights of the plaintiffs as therein decreed, from which decree the defendants appeal.

*Zera Snow (Condon & Condon* on the brief), for Appellants.

*Alfred S. Bennett,* for Respondents.

MOORE, J. (after stating the facts).—1. It may be stated as a general proposition of law, that if there has been an uninterrupted user and enjoyment of an easement in a particular way for more than ten years, it affords a conclusive presumption of right in the party who shall have enjoyed it, provided the use be not by authority of law or by agreement with the owner of the inheritance: Washburn, Easem. 2 ed. 106; *Tolman* v. *Casey,* 15 Or. 83 (13 Pac. Rep. 669). The evidence conclusively shows that from 1863 to 1885 there had been an uninterrupted use of this ditch by the plaintiffs, their predecessors and

grantors; that from 1866, the date of Simpson's posses-
sion of the land, to 1885, when the defendant interfered
with the ditch, the plaintiffs, their grantors and ances-
tors, had conducted thirty-six inches of water from said
creek to their land during the irrigating season of each
year.    This use and enjoyment affords a presumption of
right in them which must prevail, unless the defendants
can show that such possession was maintained by the
license or indulgence of themselves, their grantors or
predecessors.    The evidence further shows that when
Mr. Jackson obtained a deed from the state for the land
now owned by the defendants, he had some settlement
with Mr. Simpson in relation to this ditch.    Mrs. Coven-
ton, one of the plaintiffs, upon her direct examination,
testified upon this subject as follows:    "In 1872, between
Christmas and New Year, Mr. Jackson, a man that owned
the place that Mr. Seufert now owns, he came to me, and
told me that he wanted to see my father in reference
about the ditch, and left word with me for my father to
meet him somewhere here in town,—I don't remember
where, but I think it was at Colonel Gates' office, as
Colonel Gates was my father's lawyer,—to compromise,
to see whether he could get any damage or not for the
water running across his land; and when my father came
into town to settle for the water right, he went, and they
settled it through Colonel Gates.    Colonel Gates told me
so.    I didn't hear it.    My father also told me that he had
settled it."    At the time of the alleged settlement—
Christmas, 1872—the statute of limitations for the re-
covery of real property was twenty years; and hence the
possession of Mr. Simpson, if tacked to that of the
Italians, would not then toll the entry of Mr. Jackson,
who had the legal title.    Was the settlement such a
recognition of Mr. Jackson's legal title as to preclude the
presumption of hostility upon the part of Mr. Simpson,
and of those who claim under him?

    2.    An adverse right of easement cannot grow out of
a mere permissive enjoyment:    Washburn, Easem. 2 ed.

124. The burden of proving that plaintiffs held possession by license or indulgence was cast upon the defendants; it was their duty to show what was embraced in this settlement. In the absence of this proof, can it be presumed that this settlement was the purchase of the right to maintain the ditch? An easement cannot be granted by parol; yet, if Mr Simpson purchased from Mr. Jackson the right to use the ditch, and used the same for ten years, and such use was acquiesced in by Mr. Jackson and his grantees, it would be such an exercise of the easement, under a claim of right, as to give a prescriptive right to the same. It is no objection to granting an easement by prescription that the same was originally granted or bargained for by parol. That the use began by permission does not affect the prescriptive right, if it has been used and exercised for the requisite period under a claim of right on the part of Mr. Simpson and his heirs, and their grantees If the use of a way is under a parol consent given by the owner of the servient tenement to use it as if it were legally conveyed, it is a use as of right: Gould, Waters, § 338; Washburn, Easem. 2 ed. 127. The plaintiffs have used the ditch as if it had been legally conveyed to them, — that is, they have exercised such acts of ownership over it as a man would over his own property, — and the court must presume, in the absence of any evidence to the contrary, that the settlement was a parol consent or transfer by Mr. Jackson to Mr Simpson of the right to use the ditch, and hence it was a use as of right.

3. No offer to purchase after the statute has fully run will bar the claim of adverse possession unless the relation of vendor and vendee under a contract to purchase, or of landlord and tenant, once existed between the parties. It would appear from the evidence that plaintiffs' possession and that of their grantors and predecessors had been open, notorious, peaceable, continuous, and adverse for the full period of more than ten years.

4.  Appellants contend that, since none of plaintiffs'
deeds contain any mention of this ditch or easement, no
right thereto could pass under the *habendum* clause of
"appurtenances thereunto belonging," and hence the
possession of the plaintiffs cannot be tacked to that of
their grantors and ancestor.   In *Kent* v. *Waite*, 10 Pick.
141, objection was made to a deed upon the same ground,
and the court held that a right of way, or other easement
appurtenant to the land, would pass by a grant of the
land without any special mention of it being made.   So
in *Simmons* v. *Winters*, 21 Or. 44 (27 Pac. Rep. 7; 28 Am.
St. Rep. 727), LORD, J., says:  "When there is no express
grant or sale of a ditch or water right mentioned in the
deed of land, other than may be included in the use of the
word appurtenances, the question is, whether the interest
of the grantor in such ditch and right to the use of the
water would be conveyed or pass to the grantee by such
deed.   The maxim of law is, that whoever grants a thing,
is supposed, also, tacitly to grant that without which the
grant would be of no avail."  In *Leonard* v. *Leonard*,
7 Allen, 280, the court says:  "But it is contended that
in order to create a priority of use, the easement must be
expressly mentioned in the deed and conveyed by it.
In support of this position, it is said that until the lapse
of twenty years the adverse user consists merely of a
series of tortious acts, none of which have created any
right, and since no right of way is as yet legally appur-
tenant to the land, it will not pass as an appurtenance,
and therefore the user of the purchaser is not in privity
with the user of his grantor, but wholly independent of
it.   The principle that a disseisor of land cannot tack
his possession to that of a prior disseisor under whom he
does not claim, and with whom he has no connection, is
stated in *Melvin* v. *Proprietors*, 5 Metc. 33 (38 Am. Dec.
384); and the cases there cited are said to be applicable
to such a case as this.   On the same ground it is con-
tended that, upon the death of the person who has used
the way for less than twenty years, the subsequent user

of his heir ought not to be tacked to his user, but is independent of it, and disconnected with it, because, no right having been acquired by the ancestor, none could descend to the heir. The objection has apparently equal force in both cases, for in neither case does any title to the easement in express terms pass. Yet, in the case of the heir, it is settled by the authorities above referred to that his possession may be tacked to that of his ancestor. His user is regarded as a continuation of the user of his ancestor, on account of his privity of title to the land to which the easement has been claimed by both to be appurtenant. By the same course of reasoning, the user of an easement by a grantee should be tacked to that of his grantor. It is a continuity of user under the same claim of title, though without any real transfer of title."

Appellants contend that the decree practically gives to plaintiffs all the waters of the creek in dry seasons. The right of plaintiffs to divert the waters of the creek is based upon their adverse user, and the acquiescence of the riparian proprietors below the point where the ditch enters the same. If no more water is diverted by the decree than they have been using for a period of more than ten years, then their right to continue the diversion must prevail. The quantity of water to be appropriated is to be measured by the capacity of the ditch at its smallest part,— that is, at the point where the least water can be carried through it: Pomeroy, Rip. Rights, § 80. The evidence shows that the water from this ditch has to be carried in a pipe below the grade of a railroad and thence up to the level again, and for this purpose an iron pipe seven inches in diameter had been used, which would carry about thirty-eight and one-half inches, but that this pipe had been taken out and its place supplied by a wooden box six inches square with a carrying capacity of thirty-six inches of water, which amount was awarded plaintiffs by the decree of the court below, which is affirmed.