Decided 23 November, 1903.

## GLAZE v. FROST.

[ 74 Pac. 336.]

WATERS—EXTENT OF RIGHT OF PRIOR APPROPRIATOR.

1. A prior appropriator of water for irrigation purposes is.entitled to divert and use a quantity of water sufficient to properly irrigate his tillable land, if he prosecutes the cultivation thereof with reasonable diligence.

QUANTITY OF WATER AWARDED AND CONDITIONS THEREOF.

2. In this case a decree in plaintiff's favor for fifty inches of water is reluctantly affirmed, but it will be measured at the head of his ditch and under a four inch pressure, after he has made his dam water tight and sufficiently high to create the necessary head.

From Grant: MORTON D. CLIFFORD, Judge.

Suit by Bascom Glaze against Herman Frost to restrain the diversion of certain waters, resulting in a decree for plaintiff, from which defendant appeals. Submitted on briefs under rule 16.　　　AFFIRMED.

For appellant there was a brief over the name of *Hicks & Davis*.

For respondent there was a brief over the name of *J. E. Marks*.

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is a suit to enjoin the diversion of the water of Squaw Creek, a nonnavigable stream, which rises in the Blue Mountains, in Wheeler County, flows in a well-defined channel in an easterly direction through defendant's land in that county, and through plaintiff's in Grant County. In the winter of 1891 Squaw Creek flowed wholly through government land, and, the water thereof not having been appropriated, one Ebon Officer diverted water therefrom by means of a ditch, and appropriated it to irrigate a homestead of 160 acres, upon which he filed, and, having made proof of his entry and received a final certificate, he executed a deed of the premises to F. M. Templeton and W. P. Prophet, from whom the title by mesne conveyances became vested in the plaintiff. The region through which

Squaw Creek flows is arid, and without irrigation the land usually yields no crops, but with it excellent harvests are realized. In the early spring the banks of this stream are kept well filled until the snow in the mountains has melted, when the water recedes, and about the first of July they become nearly empty, and so continue until the fall rains begin. The defendant, in the summer of 1892, having taken a homestead about three miles above plaintiff's premises, constructed a ditch from Frank's Creek, a tributary to Squaw Creek, and appropriated water therefrom for irrigation, and thereafter also appropriated water from the latter creek for the same purpose. This suit was instituted August 25, 1902, plaintiff alleging that his predecessors in interest made a prior appropriation of all the water of Squaw Creek, and that the defendant unlawfully diverts the same and prevents it from flowing to the head of his ditch, to his damage in the sum of $100. The answer denies the material allegations of the complaint, and avers that the defendant, having settled upon his land in June, 1892, immediately appropriated 50 inches of water from Squaw Creek and about 10 inches from Frank's Creek for the irrigation thereof. For a further defense it is alleged that he has used the waters from these streams adversely for more than 10 years prior to the commencement of this suit. The reply having denied the allegations of new matter in the answer, a trial was had, resulting in a decree that plaintiff is entitled to 50 inches of water from Squaw Creek, miner's measure, at the head of his ditch, and the defendant to 10 inches from Frank's Creek, perpetually enjoining him from interfering with the flow of the quantity so awarded, and he appeals.

An examination of the testimony conclusively shows that plaintiff's predecessors in interest made a valid prior appropriation of water from Squaw Creek, which they continuously used in irrigating the land now owned by plain-

tiff, and, this being so, the only question to be considered is the measure to which he is entitled.

The plaintiff, as a witness in his own behalf, testifies that his cultivated land consists of about 20 acres; that in the dry season his ditch could carry all the water in Squaw Creek, which does not then exceed 50 inches, miner's measurement, which quantity he needs properly to irrigate his crops. His witness Charles Johnson corroborates him in this respect, and testifies that all the water of Squaw Creek is necessary to irrigate plaintiff's agricultural land, which consists of 20 acres of alfalfa. Clarence Johnson, another witness for plaintiff, having testified that he had experience in irrigating, was asked what amount of water would be required to raise a crop on the tillable lands of Bascom Gaze, and replied: "Well, I would not want to start in with less than two and one-half miner's inches." This answer evidently refers to the quantity of water required to irrigate an acre of land, and his testimony is not contradicted in any manner, and, though it is possible that an acre of land might at first require two and one-half inches of water to irrigate a crop of alfalfa, as intimated, it seems altogether improbable that such a quantity is necessary for that purpose during the entire irrigating season. No mining engineer or other competent person was called to express an opinion in respect to the amount of water required to irrigate land in the vicinity of Squaw Creek similar to that owned by plaintiff, and, though the witnesses appearing for him had used water for that purpose, they did not seem to know how to measure it. It is generally conceded that under a six-inch pressure an aperture one inch square, having little or no friction and a sufficient fall below, will discharge about one and one-half cubic feet of water per minute, or 2,160 cubic feet in a day. An acre contains 43,560 square feet, and if it be assumed that the land is level, and the water does not evaporate and is not absorbed,

to cover that area one foot in depth would require twenty and one-sixth days. The testimony shows that the water in Squaw Creek generally recedes, so that about July 1st of each year there is a scarcity, which usually extends until some time in October. If it be admitted, however, that the drought continues only eighty and two-thirds days, or from July 1st to September 19th, and one inch of water constantly flows, under the circumstances adverted to, it would, in that time, accumulate to a depth of four feet, and a permanent discharge of two and one-half inches would, under the same conditions, cover an acre of land to the depth of 10 feet. That it requires such a quantity of water to irrigate alfalfa or any other crop is unreasonable, and the computation here given demonstrates that the witnesses truthfully testified that they did not understand the method of measuring water.

1. The plaintiff, having a prior right of appropriation, is entitled to divert and use a quantity of water sufficient properly to irrigate his tillable land, if the cultivation thereof has been prosecuted with reasonable diligence: *Cole* v. *Logan*, 24 Or. 304 (33 Pac. 568).

2. The testimony shows how much land he has in cultivation, but it does not disclose whether or not he has any more that could be irrigated by water from Squaw Creek, and the quantity awarded him must, therefore, have been based upon his present, and not upon his future, requirements. He testifies, as a witness in his own behalf, that his ditch is about of a given width and depth, and that in the dry season it is capable of carrying all the water that flows in the stream, which quantity he can use without waste. The amount of water to which an appropriator is entitled may occasionally be determined by the capacity of his ditch at its smallest part (*Coventon* v. *Seufert*, 23 Or. 548, 32 Pac. 508); but, as it does not appear that an accurate measurement was ever made of plaintiff's

ditch at any place, his testimony in relation thereto is insufficient upon which to base a decree. The testimony of Clarence Johnson in respect to the quantity of water so required not having been contradicted by the defendant, the court, undoubtedly considering that 20 acres was the limit of plaintiff's cultivated land requiring irrigation, and, computing two and one-half miner's inches per acre as the measure to which he was entitled, was compelled to award him 50 inches, and in this conclusion we reluctantly concur. The decree perpetually enjoins the defendant from preventing less than 50 inches of water, miner's measurement, from flowing in the creek to the head of plaintiff's ditch, but it does not provide where that quantity shall be measured, or prescribe what shall constitute a miner's inch of water.

It appears from the transcript that plaintiff's brother owns land at the mouth of Squaw Creek, which he irrigates with water diverted from that stream at a point below the head of plaintiff's ditch. The plaintiff having testified that some water seeps through the dam built below his point of diversion, it is evident that the greater the quantity of water escaping the more advantageous it is to his brother. The latter testifies, however, that when the plaintiff irrigates his land as he should no water remains for him. Fred Officer, a witness called by the defendant, testified that the water of Squaw Creek, properly used, would be sufficient, in ordinary seasons, to irrigate the lands of the plaintiff and the defendant. In view of this testimony, we conclude that the water decreed plaintiff should be measured at the head of his ditch, and as it appears that his dam leaks, and that the seepage therefrom benefits his brother to the detriment of the defendant, he will be required, before he is entitled to the quantity awarded him, to erect and maintain a tight dam of sufficient height to raise the water in his ditch to the required head; and, as

44 OR.——3.

the decree is silent as to what contitutes a miner's inch of water, we conclude, in view of the great quantity awarded, that it should be measured under a pressure of four inches.

The decree, with the additions thereto as hereinbefore specified, will be affirmed, each party to pay his own costs in this court.                                         AFFIRMED.

---

Decided 23 November, 1903; rehearing denied 2 March, 1904.