Argued November 3, decided December 12, 1911, rehearing denied
February 13, 1912.

# DONNELLY v. CUHNA.

[119 Pac. 331.]

WATERS—PRIOR APPROPRIATION—EVIDENCE.

1. In an action to determine conflicting water rights, evidence *held*
to warrant a finding that defendant had conducted water from the
stream, through a slough, prior to plaintiff's appropriation, and that
defendant's right was therefore prior to that of plaintiff.

WATERS—APPROPRIATION—PRIORITY—AMOUNT.

2. The amount of water that may be taken by a prior appropriator
for irrigation depends on the number of acres of irrigable land suscept-
ible of cultivation, the degree of sterility of the premises, the most
profitable crops that can be raised by artificial application of moisture,
and the quantity of water necessary to produce the harvest by careful
husbandry.

WATERS—PRIOR APPROPRIATION—AMOUNT.

3. In a suit to determine water rights, evidence *held* to show that
defendant, under a prior appropriation, was only entitled to 100 inches
of water as against plaintiff.

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Frank Donnelly and Wm. H.
Daughtrey against Joseph Cuhna to enjoin interference
with the flow of water. It is alleged in the complaint,
in effect, that the plaintiffs, Frank Donnelly and Wm. H.
Daughtrey, own at Echo, Oregon, a gristmill, which is
operated by water taken from the Umatilla River and
conducted in a race whereby a prior appropriation of
the water of that stream was made to the extent of 36
second feet which quantity has been used in propelling
the machinery of the mill and irrigating about 60 acres
of alfalfa land lying under the race, and that the
defendant, Joseph Cuhna, unlawfully diverted the water
from the river above plaintiffs' dam that deflected the
water into the race, thereby preventing the operation
of the mill.

The answer denies the material averments of the
complaint, and alleges that defendant's predecessors in

title and interest made a prior appropriation of the
water of the river, at a place above plaintiffs' dam,
whereby 400 inches, miner's measurement, was ·diverted
and has been constantly used under a claim of right for
more than ten years prior to the commencement of this
suit, adversely to all persons.

The reply put in issue the averments of new matter
in the answer, and, the cause having been tried, findings
of fact and law were made conformable to the aver-
ments of the answer, except that defendant was entitled
to only 150 inches of the water as a prior right, and, a
decree having been given in accordance therewith, the
plaintiffs appeal.                                MODIFIED.

For appellants there was a brief over the names of
*Messrs. Carey* and *Kerr, Mr. Harrison Allen, Mr. R. R.
Johnson and Mr. Fredrick Steiwer,* with an oral argu-
ment by *Mr. Johnson.*

For respondent there was a brief over the names of
*Messrs. Raley & Raley,* with an oral argument by
*Mr. James H. Raley.*

MR. JUSTICE MOORE delivered the opinion of the court.

The testimony shows that plaintiffs' predecessors in
title, J. H. Koontz, in 1883 built a dam across the Umatilla
River near the southeast corner of the S. W. ¼ of section
22, in township 3 N., of range 29 E., in Umatilla County,
and dug a ditch part of the way and constructed a flume
the remainder of the distance of about two miles north-
westerly, on the east side of the river, to Echo, where,
in 1885, he built a flourmill, the motive power of which
was furnished by water flowing in the ditch and flume.
The mill was destroyed by fire in 1889, but was rebuilt
the next year.   The United States reclamation service
occupied for a short period the line of the mill race, but
at all other times since the mill was originally built

it was operated, and the land lying under the ditch has been irrigated when there was sufficient water for that purpose. From October 1st of any year, until July or August of the next year, there is an abundance of water in the river to supply all reasonable demands; but between August and October of each year that quantity diminishes, and contests ensue for the use of water.

The title to the land owned by Cuhna and his alleged right to appropriate water for irrigation from the river at places above the plaintiffs' dam were derived as follows: John Dickey was the owner of 160 acres of land lying on the west side of the stream and above the line where the dam now diverting water into the mill race was subsequently placed, and in 1879 he commenced near the southeast corner of his land to dig a ditch from a slough, following the foot of a rock bluff, northwesterly across his premises, in which undertaking he was assisted by James Taylor, who extended the ditch to and upon his lands, four 40-acre tracts of which lie west and two 40-acre pieces are situate north of the line of the Dickey lands, and water was thereby diverted and used for irrigation. Dickey conveyed his premises to Taylor, who in 1887 dug a new ditch, commencing below the old ditch, but above the dam now owned by plaintiffs, and extended the conduit across his lands, using the water flowing therein for irrigation, and thereafter abandoned the old ditch. Taylor died, and his widow, having remarried, conveyed the Taylor and Dickey lands to Cuhna, who continued to use water through the new ditch for irrigating such premises.

Koontz secured from persons who owned lands bordering on or through which the Umatilla River flows, quitclaim deeds conveying the right to divert from the natural channel of that stream, between the places of intake and the termination of the mill race, such quan-

tity of water as might be necessary for irrigation along the line of the ditch and flume, and also to propel any mill that he, or his heirs or assigns, might erect at or near Echo. Taylor, being owner of 80 acres of riparian land situate below the line of the dam built by Koontz, granted to the latter December 21, 1883, the right to divert from such premises and appropriate water by the mill race. At that time it will be remembered that Taylor and Dickey had an old ditch that tapped a slough on the west side of the river some distance above the dam built by Koontz. Taylor's deed conveyed only the right to divert water affecting his lands lying below the intake of the mill race, and did not diminish his right to take water by the old ditch for irrigation, nor prevent him from moving his place of diversion to that of the new ditch.

It is maintained by plaintiffs' counsel that the old ditch referred to was dug by Taylor and Dickey to drain their lands, and that no water flowing in that conduit had ever been used for irrigation. The fact thus asserted to have been established is deduced from testimony which shows that levees were built by Dickey and Taylor to keep the freshets caused by melting snow from overflowing their lands. Two sons of John Dickey testified that in 1871 their father and Taylor built levees along the slough to protect the lands from overflow, but that in 1879 the old ditch was dug through such embankment.

1. We think it satisfactorily appears that after the sudden floods subsided, and the river reached its ordinary stage, water was diverted from the slough by the old ditch and used for irrigation; the quantity being annually increased as the lands were leveled and put in cultivation, the limit of which area has been reached by Cuhna. His claim to the use of the water by the new ditch is prior to plaintiffs' appropriation, and therefore

superior to their right, and the only question remaining
is the quantity of water to which he is reasonably
entitled.

2. The defendant's attorney, invoking the rule adopted
in *Coventon* v. *Seufert*, 23 Or. 548 (32 Pac· 508), that
the capacity of the ditch at the smallest place affords
the measure of the right, insists that the quantity of
water awarded by the decree was a just distribution.
The principle announced in the case referred to is not
now controlling, when more careful methods of irriga-
tion have been discovered, so that water is not wasted,
and a larger area of land is adequately moistened,
thereby promoting a greater and better development of
the country. The adaptability of arid lands to the growth
of particular crops by careful irrigation furnishes the
test of the quantity of water reasonably necessary for
that purpose. The number of acres of such land that
is susceptible to cultivation, the degree of sterility of
the premises, the most profitable crops that can be
raised by artificial application of moisture, and the
quantity of water reasonably necessary to produce the
harvest on an acre by careful husbandry, are elements
to be considered in determining the measure of an
appropriation.

3. Keeping this rule in view, the testimony will be
examined as to the area of the defendant's cultivable
land that can be irrigated by his ditch. L. M. Canfield,
a surveyor, as plaintiffs' witness, stated upon oath that
he accurately measured such lands, to determine the
acreage and topography of the premises, and from the
notes of such survey and a plane table sheet he made
a map, which was received in evidence. He was then
directed as follows:

"You may take up this Cuhna land section by section
in your own way, and tell the court how much alfalfa
land, orchard land, grain land, irrigated and nonirri-

gated land, you found in making your survey of the same."

He replied:

"The S. E. ¼ of the S. E. ¼ of section 21; I will say all of this land of Joseph Cuhna's is in township 3 N., range 29 E. of the Willamette meridian. In section 21 there are 10.46 acres grain. There is no alfalfa and no orchards. In the S. W. ¼ of the S. W. ¼ of section 22 there is .54 acres of alfalfa, no orchard, and 55.5 acres of grain; that being all the land in 22. In the N. E. ¼ of the N. E. ¼ of section 28, there is 2.70 acres of alfalfa, no orchard, and 9.36 acres of grain; this being all the land in section 28 that is irrigated by the Joseph Cuhna ditch and land in cultivation. In section 27, the N. W. ¼ of the N. W. ¼, there is 32.96 acres, and there is 2.12 acres of orchard, and .9 acres of grain, and 1.29 acres being leveled. In the S. W. ¼ of the N. W. ¼ of section 27 there is 2.6 acres of alfalfa, no orchard, no grain. In the N. E. ¼ of the N. W. ¼ of section 27 there is 1.20 acres of alfalfa, 2.20 acres of orchard, and 9.91 acres being leveled at this time. In the S. E. ¼ of the N. W. ¼ of section 27 there is 15.47 acres in alfalfa, no orchard, or no grain. In the S. W. ¼ of the N. E. ¼ of section 27 there is 7.2 acres of alfalfa, no orchard, or no grain; this being all the land that is under the Joseph Cuhna ditches, or that is in cultivation."

It will be observed that Canfield's testimony as taken and reported by the stenographer makes him say, respecting the irrigable land in the S. W. ¼ of the S. W. ¼ of section 22: "There is .54 acres of alfalfa, no orchard, and 55.5 acres of grain." As the area thus noted would make a 40-acre tract contain 56.04 acres, it is very evident the stenographer made a mistake in the decimal point. The sum of the areas of the irrigable land on the various tracts as noted is 154.23 acres. In awarding to defendant 150 inches of water, it is believed the trial court took the area thus computed as the basis of the quantity reasonably required for irri-

gation. By moving the decimal point one integer to the left, changes the 55.5 acres to 5.55, thereby reducing the irrigable land to 104.28 acres as the proper sum of the several tracts. This view is confirmed by an examination of the map prepared by Canfield from his measurements of the land, which shows a very small part of the 40-acre tract referred to as susceptible to irrigation.

Predicated upon the award made by the court as applicable to 154.23 acres, the actual area would be entitled to 101.41 inches, and we believe 100 inches is sufficient properly to irrigate the defendant's land.

The determination of the lower court will therefore be modified, and 100 inches of water will be given as the measure of the defendant's right; but in all other respects the decree is affirmed.          MODIFIED.

Mr. Justice BEAN took no part at the hearing or in the consideration of this cause on appeal.