Decided 17 December, 1907.

## McNEAR v. GUISTIN.

92 Pac. 1075.

ADVERSE POSSESSION—ELEMENTS.

1. Occupancy of land necessary to constitute title by adverse possession, must be so open and exclusive as to leave no inquiry as to occupant's intention, so notorious that the owner may be presumed to have knowledge that the occupancy is adverse, and so continuous as to have furnished a cause of action every day during the required period. Acts less continuous and of brief duration, do not constitute such occupancy as would ripen into a title by adverse possession.

SAME—SUFFICIENCY OF EVIDENCE.

2. Evidence in a suit to determine an adverse claim to real estate, to the effect that defendant had visited the land forty or fifty times in ten years, occasionally pruning a few fruit trees and planting one or two sacks of potatoes, *held,* not to show occupancy by defendant sufficient to acquire title by adverse possession.

From Clackamas: Thomas A. McBride, Judge.

Suit by George P. McNear to determine an adverse claim to real estate. A decree was rendered in favor of plaintiff, and defendant appeals.                              Affirmed.

For respondent there was a brief over the names of *Gammans & Malarkey,* with an oral argument by *Mr. George G. Gammans.*

For appellant there was a brief and an oral argument by *Mr. Theodore J. Geisler.*

Opinion by Mr. Chief Justice Bean.

This is a suit to determine an adverse claim to 160 acres of land in Clackamas County. The complaint avers that plaintiff is the owner in fee of the land in question; that it is not in the actual possession of another; that defendant claims an interest or estate therein adverse to plaintiff, without legal or equitable right, and prays that he be required to appear and set up his claim and that the same be adjudged to be invalid. The defendant pleads title by adverse possession to a small portion of the land described in the complaint. The reply put in issue the averments of the answer, and upon the trial a decree was rendered in favor of plaintiff, from which defendant appeals.

1. The land described in the complaint is wild, unimproved land, patented to the Oregon & California Railroad Company under the act of congress of July 25, 1886 (14 Stat. U. S. 239), granting lands to aid in the construction of a railroad and telegraph line from the Central Pacific Line, in California, to Portland, in this State. The plaintiff succeeded by mesne conveyances, in 1891, to the title to the railroad company, and has ever since claimed to own the land and paid the taxes thereon. Prior to the decision of the Supreme Court in January, 1900 (*United States* v. *Oregon & California R. Co.* 176 U. S. 28: 20 Sup. Ct. 261: 44 L. Ed. 358), a controversy existed as to whether the particular land in dispute was within the limits of the railroad grant. In the spring of 1892, defendant, claiming that it was public land, entered thereon, constructed a small frame house, 14x24, cleared off trees and brush, fenced and

planted to fruit trees a small part of the land, variously esti-
mated by the witnesses to be from three to eight acres, and in
October, 1893, applied to enter the entire 160 acres under the
homestead laws. His filing was never accepted, however, for
the reason that the land passed to the railroad company under
the act of congress referred to, but he now claims title by ad-
verse possession to that portion inclosed by his fence. He never
at any time resided on the land. At the time of his alleged
entry in 1892, he was, and ever since has been, living in Port-
land, and engaged in business in that city. He kept a hired
man on the land for perhaps two years, during 1892-93, since
which time it has been unoccupied; the defendant visiting it at
intervals of a few months and remaining a short time, but doing
no work thereon, except to occasionally prune and cultivate the
fruit trees or plant a sack or two of potatoes. He says:

"Every year I go there and cultivate my fruit trees and my
vineyard, and I also plant a sack or two of potatoes for my
own use. * * I have not got much out of it, and I used to
give it to the neighbors, and I did it to cultivate the land and
to have possession of it. * * I have been living on the ranch
over 40 or 50 days, and sleeping in the house; maybe more,
not less than 40 or 50 times I go there and stay on the place,
and I have a man on my place to do the work. * * At the be-
ginning, when we commenced to clear the land, * * I go there
myself just what was necessary to keep the land. I never left
a day that I wasn't there without hard work, just as good as
any farmer."

J. N. Davis examined the land in March, 1902, with the view
of purchasing it from plaintiff, and he testifies that he saw no
indication that it was occupied, and thought it to have been
abandoned; that the place was in a dilapidated condition, and
there was nothing to show that any work had been done on it
for years; that there were some fruit trees growing thereon, but
they did not appear to have been pruned or cultivated. E. C.
Maddock and B. F. Halstead both testified that in October, 1903,
the orchard had grown up with ferns and weeds, and there were
no indications at that time that the place was occupied
had the appearance of having been abandoned.

Upon these facts, two contentions are made: (1) That defendant was in actual possession of the disputed premises at the time this suit was commenced, and therefore the court is without jurisdiction; (2) that he has acquired title by adverse possession to the small tract inclosed by fence. These two questions may be treated as one for the purposes of this suit. The defendant does not claim actual possession at the time the suit was instituted different from that claimed by him for the previous ten years, and, unless he has been in possession during that time, he was not at the commencement of the suit. It is only necessary, then, to determine whether, under the evidence, defendant's alleged possession, since 1892, has been such as would ripen into a title by adverse possession, assuming all other required elements to exist. Occupancy of land necessary to constitute a title by adverse possession must be continuous, open, notorious and exclusive, during the entire time required by the statute of limitations. There is no particular manner by which such possession may be indicated or made manifest, and no particular act or series of acts are required to be done on the land. There must, however, be actual use and occupancy, continuous for the necessary length of time, of such an unequivocal character as will indicate to the owner an assertion of an exclusive appropriation and ownership. In short, the acts of the alleged occupant must be so open and exclusive as to leave no inquiry as to his intention, so notorious that the owner may be presumed to have knowledge that the occupancy is adverse, and so continuous as to have furnished a cause of action every day during the required period. Acts not so continuous and of brief duration do not constitute such an adverse possession as is contemplated by law: 1 Cyc. 984; *Adams* v. *Clapp,* 87 Me. 316 (32 N. E. 911) ; *Elyton Land Co.* v. *Denny,* 108 Ala. 553 (18 South. 561) ; *Bynum* v. *Hewlett,* 137 Ala. 333 (34 South. 391) ; *Barr* v. *Potter,* 57 S. W. 478; *Cox* v. *Ward,* 107 N. C. 507 (12 S. E. 379) ; *Wickliffe* v. ⸻ B. Mon. 253.

by these requirements, it is clear that defendant's ⸱⸱s not sufficient to acquire title by adverse posses-

sion.  His acts of possession, according to his own testimony, were disconnected, at irregular intervals, and of brief duration, and not of an open, notorious, exclusive and continuous character demanded by the law.  Visiting the land forty or fifty times in ten years, and occasionally pruning a few fruit trees and planting a sack or two of potatoes, was not such an assertion of title as would continually expose him to an action for possession by the true owner, and a constant liability to such an action is made by many authorities essential evidence of a right to claim the benefit of the statute of limitations.

The decree will be affirmed.                    AFFIRMED.