Argued December 7, decided December 19, 1911.

## A. C. BOHRNSTEDT CO. *v.* SCHAREN.

[119 Pac. 337.]

EASEMENTS—PRESCRIPTION—PRIVATE WAY.

1. Where a way has been established by consent of the owner of the fee, evidence to substantiate a prescriptive right to continue the easement must be clear and conclusive.

HIGHWAYS—PRIVATE WAY—IMPROVEMENT.

2. Where a way was originally private, it would be presumed that slight improvements made thereon were made with the desire to make the way passable, and was therefore insufficient to impart to the owners of the fee notice of an intention to assert an adverse use so as to convert the way into a public road.

EASEMENTS—PRIVATE WAY—OBSTRUCTION.

3. Where a lane originally established as a private way was a *cul-de-sac,* it was not incumbent on the owners of the fee to place obstructions therein, or to notify persons using it that the license, pursuant to which the travel was first permitted, was revocable, since the burden devolved on persons using the lane to unmistakably notify the owners of the fee that they claimed an adverse right of use in order to initiate a prescriptive right.

From Lane:   LAWRENCE T. HARRIS, Judge.

This is a suit by the A. C. Bohrnstedt Company, a corporation, Charles Olson, S. Settenrich, T. R. Sloan, George Pirie, J. G. Gay and G. W. Gordon against W. J. Scharen to enjoin the obstruction of an alleged public road. From a decree of the circuit court dismissing the suit, plaintiffs appeal.                                    AFFIRMED.

For appellants there was a brief with an oral argument by *Mr. Sjur P. Ness.*

For respondent there was a brief with an oral argument by *Mr. William G. Martin.*

MR. JUSTICE MOORE delivered the opinion of the court.

It appears from the testimony that about the year 1883 William R. Dillard held the legal title to land in Lane County.  Joining a part of his premises on the east, his brothers Luther and George then owned undivided inter-

ests in land that extended east a mile to a north and south county road. The land so held in common was partitioned, and Luther Dillard obtained a strip off the north end about 59 rods wide, and George Dillard secured the remainder. In locating the boundary thus determined it seems that the line was placed too far north. William R. Dillard having no road to his land, the brothers mentioned agreed with him that he should have a passageway along such division line, and, pursuant to the stipulation, fences were built forming a lane in the center of which the boundary was supposed to have been. No deed or other writing was ever executed to evidence the way, nor did Luther Dillard or his successors in interest ever plat or sell any of the north strip with reference to the lane. The west end of the way was closed with a gate through which William R. Dillard and persons who lived west of his premises and their successors in interest passed and traveled along the lane to and from the county road for more than ten years prior to any interference with the way, and without objection from any person or notice that the lane was private property. Several persons who thus used the lane joined in repairing it occasionally, but no public money or labor was ever expended thereon.

The William R. Dillard land is now owned by M. R. Hastings. The defendant is in possession, under a contract to purchase, of the premises formerly owned by Luther Dillard. The Bohrnstedt Company, having secured a deed of the George Dillard land, caused it to be surveyed and platted into small tracts which are being cultivated, and fruit trees set out thereon with a view of selling the orchards. The corporaiton's entire tract has passageways extending from the south boundary on each side of double tiers of small tracts to the lane. The plaintiffs Olson, Settenrich, and Sloan have secured from the Bohrnstedt Company contracts for the purchase

of orchard lands and Pirie, Gay, and Jordan had formerly traveled along the lane. A public highway has been established from the county road on the north boundary of the land of which the defendant is in possession, thence west across the premises owned by Hastings, and by other persons to and terminating at a north and south county road. The premises on which such east and west highway is located were conveyed by the respective owners to the county, the grantors agreeing with each other that, when the road was opened, they would relinquish to Scharen whatever interests they may have had in or to the lane. The crossroad was opened for travel about October, 1909, whereupon the defendant began to obstruct the lane precipitating this suit which resulted as hereinbefore indicated.

Some controversy exists as to whether or not William R. Dillard paid any consideration to his brothers for the use of the way evidenced by the lane. This question, however, is not regarded as important, for it seems to have been conceded by the defendant that the way was an appurtenant which passed by *mesne* conveyances to Hastings, who relinquished all interest therein in consideration of securing the establishment of a public highway across his land. No evidence was offered tending to show either an express or an implied dedication of the way, or to prove any privity of contract or estate between any of the persons traveling in the lane and the owners of the fee thereof. If the right to use the way has not been secured by prescription, the grantors whose lands are situate west of Hastings' premises had no interest in the lane to abandon, as a consideration for the establishment of the public highway, and the plaintiffs have no rights in or to the way which they can enforce. Whatever privileges William R. Dillard may have secured from his brothers, the way which he was permitted to use was unquestionably private, and it has not by any act of

Luther Dillard or his successors in interest constituting an estoppel been converted into a public road so far as the lane extends upon the premises formerly owned by him. If the easement which he secured had been established and maintained without the consent of the owner of the fee for the time specified, it would probably be presumed that the use was pursuant to a claim of right, and adverse, thereby imposing on such owner the burden of proving that the way had been enjoyed by license or privilege: *Coventon* v. *Seufert,* 23 Or. 548, 550 (32 Pac. 508). In that case, however, it was inadvertently said the presumption was "conclusive" when the qualifying word "disputable" should have been used. As further illustrating the legal principle thus announced, see *Pierce* v. *Cloud,* 42 Pa. 102 (82 Am. Dec. 496) ; *Chollar-Potosi M. Co.* v. *Kennedy,* 3 Nev. 361 (93 Am. Dec. 409).

1. Where a way has been established by consent of the owner of the fee, evidence to substantiate a prescriptive right to continue the easement ought to be clear and conclusive. In *Hall* v. *McLeod,* 2 Metc. (Ky.) 98 (74 Am. Dec. 400, 402), Mr. Justice Simpson, discussing a feature of this rule, says:

"It cannot be admitted that, where the proprietor of land has a passway through it for his own use, the mere permissive use of it by other persons for half a century would confer upon them any right to its enjoyment. So long as its use is merely permissive, it confers no right; but the proprietor can prohibit its use or discontinue it altogether at his pleasure. A different doctrine would have a tendency to destroy all neighborhood accommodation in the way of travel; for if it were once understood that a man by allowing a neighbor to pass through his farm without objection over the passway which he used himself would thereby, after a lapse of 20 or 30 years, confer a right on him to require the passway to

be kept open for his benefit and enjoyment, a prohibition against all such travel would immediately ensue."

To the same effect, see *Stacey* v. *Miller,* 14 Mo. 478 (55 Am. Dec. 112) : "A private way," says a noted author, "may doubtless be transformed into a public one, but, in order that this may result without legal proceedings, it must appear that the owner fully consented to the change, or there must be some element of estoppel to deprive him of his rights as the owner of the fee. Where a way is laid out and used as a private way, the mere fact that the public also makes use of it without objection from the owner will not make it a public way. If the use by the public is not clearly declaratory of the right to use it as a highway, and is not so understood by the owner of the fee, the public will not acquire the free right of passage, nor will it be burdened with the duty of making it safe and convenient for passage." Elliott, Roads and Streets (3 ed.) § 5.

2. In the case at bar the way was originally private, and its use by William R. Dillard and his successors in interest was by permission, and the only evidence offered at the trial tending in any manner to prove the assertion of an adverse right is that a little voluntary work was done by the persons using the lane so as to render it passable. It would reasonably be implied from such improvement that a desire to make the way better prompted the repairs, for it cannot be supposed that the persons traveling along the lane would expect the owner of the fee to bear all the burden of maintaining it for their accommodation. The repairs that were made consisted of a few loads of sand that were hauled on the way, and such improvement was not, in our opinion, sufficient to impart to the owners of the fee notice of an intention to assert an adverse use so as to convert a private way into a public road.

Sig. 12

3. It will be remembered that the lane is a *cul-de-sac,* and originally established as a private way. Such being the case, it was not incumbent upon the owners of the fee to place obstructions in the lane or to notify persons using it that the license pursuant to which the travel was at first permitted was revocable. If it were sought to initiate a prescriptive right so as to change a private way into a public road, it devolved upon the persons using the lane unmistakably to notify the owners of the fee affected thereby of their claim. The Bohrnstedt Company by moving its north fence a few feet to the south can establish a way on its own land, thereby accommodating all the plaintiffs who have no other manner of reaching a county road.

Believing that no error was committed by the trial court, the decree is affirmed.               AFFIRMED.