Argued at Pendleton May 5, affirmed July 15, 1924.

## NICHOLAS BONIFACICH and WILLIAM RYAN v. W. O. CUMMINGS.

(227 Pac. 469.)

**Waters and Watercourses—Title Acquired by Prescription.**

Where plaintiffs and their predecessors in interest in irrigation of their land diverted and used all waters of a stream from 1st of April until 1st of September of each year, and during balance of time used at least one half of water, and such use had been continuous, open, and adverse to defendant and his predecessors in interest for twenty years, plaintiffs acquired title thereto by prescription.

From Grant: DALTON BIGGS, Judge.

In Banc.

This is a suit to enjoin the defendant from interfering with the plaintiffs' use of certain waters from a stream in Grant County, Oregon. The Circuit Court entered a decree in favor of plaintiffs and defendant appealed.

The water in controversy consists of a small stream of water rising in a spur of the Blue Mountains and in its natural channel would flow in a northwesterly direction upon and through the lands now owned by the defendant. This small stream constitutes a part of the water known as McClure Creek or, as later called, McHaley Creek. McHaley Creek is composed of several small streams having their source in a spur of the Blue Mountains, south of what is known as Fox Valley in Grant County, Oregon, which come together at a point a short distance south of the lands belonging to the defendant. The land of defendant was formerly owned by McClure, John W. Jackson, Chas. W. Williams and perhaps others.

Plaintiff Nicholas Bonifacich obtained title to a portion of the land now owned by him by mesne conveyance from Wm. N. Dunlap and Hiram J. Bickford, and deraigned title to other portions of his land from Cameron T. Kirkpatrick.

Plaintiff, William Ryan deraigned title to a quarter-section of land by mesne conveyance from one Walter White and another quarter-section by mesne conveyance from one Charles N. Smith. The title to the land of the several parties is admitted.

The several tracts of land are arid in character and require artificial irrigation for the successful production of crops.

The plaintiffs allege that for more than twenty years prior to 1919 they, and their predecessors in interest, have been in an open, notorious, exclusive, continuous and adverse possession of all of the water of Big Spring, or Big Spring Creek, by means of a ditch and ravine and have used the same during all of said time in the irrigation of their lands and for stock and domestic purposes until 1919, when the defendant wrongfully turned the water out of the ditch. The water from Big Spring was measured by plaintiff Bonifacich about three or four hundred yards from the spring as six inches miner's measurement under no pressure.

The defendant denies the allegations of plaintiffs as to the appropriation and use of the water in question and alleges that in 1879, Martin McClure, the predecessor in interest of the defendant, appropriated all the water of McClure Creek for the irrigation of his lands, taking the same out from the creek by means of a ditch. That at that time McClure posted a written notice at the head of the ditch to the effect that he had "taken up all of the

water in this McClure branch for irrigation pur-
poses"; that McClure used the water for irrigation
of about seventy acres of his lands in raising crops
and for pasture and for stock and for domestic pur-
poses; and that McClure and his successors in in-
terest to the title to the lands, and said water right,
used the same continuously during the irrigation
season of each year until November 3, 1886, at which
time John Carey obtained title to the premises, and
ditch and water right, and used the water during
the season of 1887 for the irrigation of seventy acres
of land, and for stock and domestic purposes; and
that in 1880 John W. Jackson entered 160 acres of
defendant's land and obtained title thereto about
June 15, 1885, and in August conveyed the land to
George W. McHaley. Charles C. Williams entered a
quarter-section of defendant's land and obtained
title thereto November 25, 1885 and conveyed the
same to George W. McHaley; that Charles C. Will-
iams used said water from McClure Creek for the
irrigation of seventy acres of his land from the
time of his entry until he sold the land to McHaley;
thereafter McHaley used the waters each year up to
and including the season of 1886; when he sold to
John Carey; that Carey used the same amount of
water during the season of 1887, and in October of
that year, Carey took out a ditch from the east bank
of McClure, or McHaley Creek, and conveyed the
water through the ditch upon his land and posted
a notice at the head of the ditch to the effect he had
claimed "500 inches of water from this McClure's
Creek," which notice was recorded October 10th of
that year in Grant County. Defendant prays for
four second-feet of water from McClure Creek.

The trial court decreed that the plaintiffs were entitled to the use of all the waters of Big Spring, or Big Spring Creek, from April 1st to September 1st of each year, for irrigation of their lands and for stock and domestic purposes; that from the 1st of September to the 1st of April of each year the plaintiffs are entitled to one half the waters of the Big Spring for irrigation and domestic purposes; and that from the first day of September until the first day of April of each year, the defendant is entitled to the use of one half of the waters of said Big Spring for stock purposes.        AFFIRMED.

For appellant there was a brief and oral argument by *Mr. A. D. Leedy.*

For respondents there was a brief and oral argument by *Mr. Geo. H. Cattanach.*

BEAN, J.—As stated in appellant's brief:

"The disputed fact here is whether or not the respondents appropriated and used the water from the 'Big Spring' and continued use thereof to such an extent that the respondents would acquire a title to the water or the use thereof by prescription."

It appears from the record that about the year 1895, Jack Wainscott appropriated the waters of Big Spring Creek, which were theretofore unappropriated and used the same for irrigation of his land; the ditch was taken out about two or three hundred yards north of the spring, and conveyed the waters around the point of the hill and dropped the same into a ravine, which runs through the SW. quarter of the SE. quarter-section 35, T. 11,

S., R. 24 E., W. M., he took the water from said ravine on to the said land for the irrigation of a garden. He used but a small portion of the waters of Big Spring and the remainder flowed down the ravine.

In 1895 Chas. N. Smith appropriated all the water from the Big Spring not used by Wainscott. He began the use of the same in the irrigation of the land in the east half of section 26 in the same township and range. In 1896 Wm. N. Dunlap entered a quarter-section of the land and began the use of the water, which was then running down the ravine, for stock and domestic purposes and for the irrigation of a small area of land. He used the same continuously during the two years he was in possession of the premises when he transferred his right to the property to Hiram J. Bickford. Bickford, upon taking possession of the lands, about September, 1898, began the use of said waters for stock and domestic purposes, and within two or three years thereafter had reduced to cultivation and was irrigating with the waters from Big Spring by means of the ditch and ravine and dams, about thirty acres of land.

Cameron T. Kirkpatrick in 1910 commenced the use of the water from the Big Spring upon his land and continued to use the same until he sold the land to plaintiff Nicholas Bonifacich.

It is clearly shown from the testimony that since the initiation of the rights of plaintiffs' predecessors, which have been explained in a general way, the plaintiffs and their predecessors in interest, in the irrigation of their lands, have required and have used all of the waters of Big Spring Creek for stock and domestic purposes and for irrigation of their

lands, from about the 1st of April until the 1st of September of each year, by means of said ditch and ravine and dams, and from the 1st of September to the 1st of April, have used at least one half of the water of said stream for irrigation and for stock and domestic purposes, and that such use has been continuous, exclusive, open, notorious and adverse to defendant and his predecessors in interest; that such use has been continued for twenty years prior to 1919, when the defendant wrongfully turned the water out of plaintiffs' ditch.

The testimony, on the part of defendant, tends to show that the time of use by plaintiffs and their predecessors of the waters of Big Spring Creek has not been for a longer period than fifteen years.

There is but little conflict in the testimony except as to the description of the various branches of McHaley Creek which is given in a different manner by the several witnesses.

The defendants have also irrigated their land and have used the waters of McHaley Creek to quite an extent for several years but we believe from the record the water which they used came from the main or long fork of McHaley Creek and the branches other than Big Spring Creek, except for the use of the small amount of water for domestic purposes and watering livestock which the trial court awarded to defendant.

It appears from the evidence that plaintiffs, and their predecessors in interest in the land and water of Spring Creek, intended to and did claim and hold possession of the use of water from Big Spring for a beneficial purpose in defiance of the claims and rights of defendant and his predecessors in interest in the water of that part of McHaley Creek, for the period of at least fifteen years, five years longer

than the statutory limitation, prior to the commencement of this suit, and before the interference in the water by defendant in 1919. The defendant and his predecessors in interest permitted such use of the water for that length of time without regaining control thereof, when they knew, or had good reason to know, of such diversion and use; therefore, the statute of limitations had run and a complete title to the use of the water had vested in plaintiffs prior to this suit, and constituted an absolute bar to the maintenance of this suit. It is not shown that such use was permissive, or was of such a character as not to constitute an invasion of the rights of defendant and the other former claimants to the water of McHaley Creek: *Gardner* v. *Wright,* 49 Or. 609, 626 (91 Pac. 286).

It is argued in the brief of appellant with much earnestness that the evidence showing adverse use of the water by plaintiffs and their predecessors in interest, is not clear and convincing. With this claim we cannot agree. As an example of the testimony on behalf of defendant, Isaac Williams, who had known the premises and resided about a half a mile therefrom for thirty years, a witness for defendant, testified in effect that a ditch was taken out of the spring when he was a boy; that he had seen water in the ditch at times for twenty years or at least fifteen years. Leet Payne, another witness for defendant, stated in substance that in the late fall a portion of the water as a rule went down the east fork of McHaley Creek to defendant's land, instead of going into plaintiffs' ditch.

The testimony in the case, taken in connection with all the circumstances, especially the amount of hay

cut on the defendant's land, indicates that there has been an increase in the area of defendant's cultivated land during the last few years by defendant, after the right to the use of water claimed by plaintiffs had become complete, and that the defendant attempted to increase his use of the water from the stream and thereby encroached upon the rights of plaintiffs.

The testimony, on the part of plaintiffs, is direct and positive that for about twenty years all of the water from Big Spring Creek had been used during the irrigating season on the land of plaintiffs to irrigate the same, and for their domestic use and for watering livestock. There is another small spring near the Big Spring, which furnishes some water for the east fork of McHaley Creek, when the season is not too dry. During one season the water from this small spring was connected with the Big Spring by means of a ditch. The right to so connect these two springs and further deplete the water of the east prong of McHaley Creek has not inured to plaintiffs, and the mingling of the water of the two springs by plaintiffs should not be permitted. When the water of Spring Creek is not used by plaintiffs it should be allowed to flow down the natural channel of the east fork of McHaley Creek.

With the restriction as to the flow of the water down the natural channel when not used by plaintiffs and the prohibition from taking the water from the smaller spring mentioned, or from the McHaley Creek, except from the east fork thereof, or Spring Creek, the decree of the lower court is affirmed. Under the circumstances of this case, each party will be required to pay his own costs and disbursements in this court.    Affirmed.