Argued October 15, affirmed November 6, 1952

# FELDMAN ET UX. *v.* KNAPP ET UX.
### 250 P. 2d 92

*C. D. Christensen,* of Portland, argued the cause for appellants. With him on the brief was Maurice W. Seitz, of Portland.

*R. R. Bullivant* argued the cause for respondents. On the brief were Pendergrass, Spackman & Bullivant, of Portland.

Before BRAND, Chief Justice, and ROSSMAN, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is a suit to establish the existence of a permanent easement of way across certain lands, and for injunctive relief, brought by Gus L. Feldman and Madeline L. Feldman, husband and wife, as plaintiffs, against Joseph B. Knapp and Helene D. Knapp, husband and wife, as defendants. The trial court entered a decree in favor of plaintiffs as prayed for in their complaint; defendants appeal.

In the year 1925 one W. J. Zimmerman, now deceased, purchased on contract the following described property situated in Dunthorpe:

"Beginning at a point on the center line of Edgecliff Road on the Westerly boundary of Block 88, said point being southwesterly 0.86 ft. from the northwest corner of said Block 88, thence northeasterly along the said Westerly boundary of blocks 88 and 89 for a distance of 116.00 ft.; thence S. 59° 26' 40" E. 494.43 ft. more or less to an intersection with the easterly boundary of said block 89 at a point 166.47 ft. from the northeast corner of said block 89; thence southwesterly along the easterly boundary of Block 89 and 88 for a distance of 383.85 ft. more or less to a point 99.50 ft. northeasterly from the B. C. on the easterly boundary of block 88; thence N. 28° 54' 30" W. 512.60 ft. more or less to beginning, containing 2.86 acres more or less; all in Dunthorpe, a townsite in the Counties of Multnomah and Clackamas, State of Oregon, according to the duly recorded maps and plats thereof on file and of record in the office of the County Clerk of Multnomah County, Oregon, in Book 622 of the records of Plats, at pages 3 and 4 thereof, and also on file and of record in the office of the County Clerk of Clackamas County, State of Oregon, in Book 15 of the Records of Plats at page 5 thereof."

The said W. J. Zimmerman died on November 2, 1926, and his estate was duly admitted to probate in the probate department of the circuit court for Multnomah county, Oregon. At the time of his death he left surviving him as his sole heirs at law his widow, Frances C. Zimmerman, and three sons, William Earl Zimmerman, Wilson Stuart Zimmerman, and Ralph Coburn Zimmerman, all over the age of twenty-one years, and all residing in Portland, Multnomah county, Oregon.

On July 8, 1927, the Oregon Iron & Steel Company, an Oregon corporation, as grantor, duly executed and delivered to Frances C. Zimmerman, widow of W. J. Zimmerman; William Earl Zimmerman, Wilson Stuart Zimmerman, and Ralph C. Zimmerman, as grantees, its warranty deed conveying to said grantees title in fee simple to the above-described real premises. On July 18, 1927, William Earl Zimmerman and Hariette E. Zimmerman, his wife; Wilson Stewart Zimmerman and Virginia C. Zimmerman, his wife; and Ralph Coburn Zimmerman, unmarried; as grantors, duly executed and delivered to Frances C. Zimmerman, as grantee, their bargain and sale deed, conveying to said grantee title in fee simple to the said premises. It follows, therefore, that on July 18, 1927, the said Frances C. Zimmerman, widow of W. J. Zimmerman, deceased, became the sole owner of all of said tract of land.

On July 20, 1927, Frances C. Zimmerman, by bargain and sale deed, conveyed the northerly portion of this tract of land to her son Wilson Stuart Zimmerman. This conveyance represented a wedding gift from the mother to her son. Although at a later time Frances C. Zimmerman again became the owner of this northerly portion of the whole tract of land particularly described above, yet the division of the tract into two parts, occasioned by the conveyance to the son, thereafter caused the original property to be considered as constituting two separate parcels of land.

For the purposes of this opinion, we shall hereafter refer to the northerly tract of land so deeded to Wilson Stuart Zimmerman as the "Knapp tract", and to the southerly portion as the "Feldman tract." Upon the trial, there was introduced into evidence a map drawn to scale, showing the location and descriptions of the

two tracts. We have caused a portion of that map to be reproduced, making some notations of our own, and have inserted a copy thereof in this opinion. We added the name "Knapp" in connection with the word "residence", and also the name "Feldman" in connection with the word "residence". We also caused the word "garage" to be spelled out instead of being abbreviated as it is on the original exhibit.

The record discloses that W. J. Zimmerman purchased the original tract of land as a present to his wife. In 1926, prior to the death of W. J. Zimmerman, husband and wife made their plans to erect a dwelling house on the land for their use as a home. They located the proposed site of the structure and planned the landscaping and the entrance way from Edgecliff road, in the light of such location. The entire tract of land was designed to constitute their homeplace. There was then no intention of subdividing the tract. The site decided upon for the dwelling house was that later used by Frances C. Zimmerman in the construction of what is now designated as the Feldman residence.

Also, in 1926, W. J. Zimmerman and his wife took some preliminary steps toward carrying their program into execution. In addition to procuring plans for the dwelling house, they caused certain timber to be cut and removed from the site of the proposed driveway leading from Edgecliff road to the residence. The route selected for such driveway is that upon which it was later constructed as shown upon the attached map.

In 1927, after the death of W. J. Zimmerman, Frances C. Zimmerman decided to carry out the plans agreed upon between herself and her husband in 1926. About the same time she decided to deed a portion

of the premises to her son Wilson Stuart Zimmerman, as previously mentioned. It also was decided to build a dwelling on the Knapp tract for the use of Wilson and his wife. Construction of the two houses commenced in the summer of 1927, the work being carried on simultaneously, and both structures were completed in November of that year. No garage was constructed as an adjunct to the Knapp tract. Attached to and as a part of the dwelling house on the Feldman tract, a three-car garage was erected.

At the same time the houses were built, a driveway leading from Edgecliff road to the garage of the Feldman residence was laid out and roughly improved. This driveway was located as planned by Mr. and Mrs. W. J. Zimmerman. As originally constructed, it was quite narrow, and it was not until 1929 that it was graded, rocked, and widened at the instance and expense of Frances Zimmerman. At that time its width throughout the entire distance from Edgecliff road to the garage on the Feldman tract was the same. This width is as shown on the map attached, commencing at Edgecliff road and running easterly to the point where there is now a bulge on the northerly side. The widening of the driveway by the construction of aprons as parts thereof (constructed to provide turn-arounds), as shown on the northerly and easterly portions, occurred in approximately the year 1932, or later. This improvement was also made at the instance and expense of Frances C. Zimmerman.

But, as originally laid out, the driveway with a "natural curve in it" was constructed primarily for the purpose of serving the dwelling house on the Feldman tract. It is true that a part of it also served as an entrance from Edgecliff road to the Knapp tract, but it is clear that that was not its principal purpose,

because at the time there was no garage on the Knapp tract, nor was there any constructed roadway from the driveway to the Knapp residence, as now exists. The roadway to the Knapp residence was constructed sometime later, the record not showing exactly when. The garage on the Knapp tract was not erected until 1935. In passing, we note that, while he lived on the Knapp tract, Wilson Stuart Zimmerman parked his car in the garage on the Feldman tract at times when he did not leave it parked outside; and this also was true of subsequent tenants of the Knapp residence prior to the time the Knapp-tract garage was constructed.

After the construction of the Feldman residence, Ralph C. Zimmerman, who is employed by the United States National Bank in Portland, lived with his mother in that house until about 1930, when the premises were rented to one E. D. Wise, now vice president of the Pacific Telephone and Telegraph Company. Ralph knew all about the original plans of his mother and father respecting the improvement of this property and, of course, was entirely familiar with the work of construction and with the later improvements made. His testimony respecting the landscaping for the entire tract is revealing. He testified as follows:

"Q Was there any effort made in the landscaping to draw a dividing line between the two properties and develop one with one type of landscaping and another with another type?

"A No. The landscaping for the entire tract was done by one man, and it was more or less planned as a single unit, as though it were a single unit, a family situation."

Wilson Stuart Zimmerman and Virginia Cecelia Zimmerman, by bargain and sale deed duly executed, reconveyed the Knapp tract to Frances C. Zimmerman

on August 29, 1928. Thereafter, and until 1933, as hereafter mentioned, Frances C. Zimmerman was the sole owner of both tracts.

On March 1, 1929, Frances C. Zimmerman executed and delivered to City Mortgage Company, an Oregon corporation, her promissory note in the sum of $10,000, secured by a mortgage lien duly executed and delivered by her on said day, covering the Knapp tract. On March 1, 1929, City Mortgage Company duly assigned this note and mortgage to New York Life Insurance Company of New York.

Also on March 1, 1929, Frances C. Zimmerman executed and delivered to City Mortgage Company her promissory note in the sum of $5,000, secured by a mortgage lien duly executed and delivered by her on said day, covering the Feldman tract. This latter note and mortgage were also assigned to the New York Life Insurance Company on March 1, 1929. This latter mortgage was duly released by an instrument in writing executed by New York Life Insurance Company and delivered to Frances C. Zimmerman, widow, on March 11, 1935.

On December 27, 1932, New York Life Insurance Company, a corporation, as plaintiff, duly commenced suit in the circuit court for Clackamas county against Frances C. Zimmerman and others, as defendants, for the foreclosure of said mortgage lien against the Knapp tract. This suit did not come to trial, but was dismissed by the court on July 19, 1933. In the meantime, however, and on June 13, 1933, Frances C. Zimmerman, widow, as grantor, executed and delivered to New York Life Insurance Company, as grantee, her warranty deed conveying said grantee title in fee simple to said Knapp tract. The warranty contained certain exceptions not material to the issues in the instant case.

In none of the instruments heretofore or hereafter mentioned, which affect the title to either tract of land, was anything said about the driveway involved in this litigation, or about any easement therefor, with one exception to be hereafter noted.

Wilson Stuart Zimmerman testified that, shortly after his mother had deeded the Knapp property to New York Life Insurance Company, she became concerned because she had failed to make any reservation in her deed of an easement of way over the Knapp tract, where the greater portion of the driveway leading to her home was located. According to Wilson, his mother requested him to contact the New York Life Insurance Company, through its then Portland agent, Commonwealth, Inc., with a view to ''obtaining an easement from her house over the roadway located on property described in Interrogatory No. 2 [Knapp tract].'' The witness testified that he telephoned to Mr. McMurray of Commonwealth, Inc., about the matter and was informed that no easement would be granted except upon payment of $700 or $800.

Wilson Stuart Zimmerman also testified that in 1927 he ''built a home on it [Knapp tract] and a driveway into the property.'' He further said: ''It was necessary to build a roadway over the property described in Interrogatory No. 2 [Knapp tract] for convenience and use and access to that property, that is, the property described in Interrogatory No. 2. At the same time, to avoid immediately building another roadway on the adjoining tract which was occupied by mother, Frances C. Zimmerman, an extension was made from the roadway into the garage constructed by my mother so she could use the roadway.'' The record does not support this claim by the son that he was the moving party in constructing the roadway, nor

does it support the inference that the roadway was constructed primarily for his benefit. It conflicts with the testimony of his brother Ralph.

Wilson also testified that his mother made use of this roadway only because of the oral permission he granted her for the purpose. Under all the circumstances of this case, we agree with Ralph Zimmerman that that claim "is a little ridiculous". In answer to the question: "Did you ever, prior to this occurrence that you have mentioned [1932], hear your brother Stuart purport to give your mother permission to continue to use that driveway?", Ralph Zimmerman replied: "Well, as counsel well knows, that is a little ridiculous."

Ralph also testified that he looked after his mother's business affairs for her until he went into the army in 1942. He said that in September, 1933, his mother received a letter from Commonwealth, Inc., representing the New York Life Insurance Company, "precluding my mother from the further use of the driveway on that portion of the property which she had deeded to her [Knapp tract]." The reasons given by the witness for his inability to produce the original letter were sufficient to entitle the admission of secondary evidence as to its contents. It is likely that this letter was in response to the request for an easement made by Wilson Stuart Zimmerman as above discussed. But this date must be kept in mind, as it is important in considering the issue of adverse user present in this case.

We infer from the record that in 1935 the New York Life Insurance Company, then the owner of the Knapp tract, became somewhat concerned about the claim of Frances C. Zimmerman to an easement of way across its land and, perhaps, about her actual use thereof.

Through its local agent, Commonwealth, Inc., it caused a survey to be made of the entire tract, including both the Knapp and Feldman tracts, by C. L. Marshall, a civil engineer and surveyor, of Portland. The survey was made on August 22, 1935. Marshall prepared a drawing according to his survey, and on this drawing is noted the driveway leading from Edgecliff road to the Feldman residence, showing it to be located for some distance on the Knapp tract before crossing over to the Feldman tract. This drawing does not show any aprons or other changes in the lines of the driveway as firmly established and improved in 1929, which were made later.

This Marshall drawing was sent to, and became a part of the files of, the New York Life Insurance Company. A photostatic copy thereof was produced by that company and is in evidence in this case. Marshall testified as to the accuracy of the exhibit, with the exception of a few pencil marks thereon which were added to his original drawing by someone else. He also produced on the trial his own office copy of the same exhibit.

It is manifest, therefore, that in August, 1935, the New York Life Insurance Company had direct notice of the location of this driveway which served the Feldman property, on a part of the land it owned.

On November 9, 1937, the New York Life Insurance Company, as grantor, by special warranty deed, conveyed the Knapp tract to Robert A. Smith and Madolyn Smith, his wife, but provided in said deed that such conveyance should be "SUBJECT, however, *to any state of facts an accurate survey would show;* the covenants, conditions, restrictions and reservations of record and in former deeds if any." (Italics ours.) The grantor then warranted the premises to be free from

all liens and encumbrances made or created by, through, or under it, and covenanted to forever warrant and defend the premises against the lawful claims and demands of all persons arising by, through, or under the said grantor.

The only state of facts that an accurate survey would show, other than, and in addition to, the metes and bounds description of the property contained in the deed, would be this driveway located on the land being conveyed. Beyond question, the New York Life Insurance Company, in its deed, had this driveway in mind and thus sought to protect itself against all claims that might lawfully be made to an easement of way across the land in question for the benefit of the Feldman tract. It was tantamount to a recognition on the part of the New York Life Insurance Company of the existence of an easement of way in favor of the Feldman tract in that portion of the driveway passing over the Knapp property.

On December 19, 1945, Robert A. Smith and Madolyn Smith, husband and wife, as grantors, conveyed the Knapp tract, by warranty deed, to Joseph B. Knapp and Helene D. Knapp, husband and wife, the defendants herein, and the Knapps have been the owners thereof since that time. They commenced their occupancy of the premises in 1945.

On February 7, 1944, Frances C. Zimmerman, a widow, as grantor, conveyed the Feldman tract, by warranty deed, to Mason S. Foote and Elizabeth A. Foote, husband and wife, as grantees. The Footes occupied the premises until September 18, 1944, when, as grantors, they conveyed the tract, by warranty deed, to Gus L. Feldman and Madeline L. Feldman, husband and wife, the plaintiffs herein, and plaintiffs have been the occupants and owners thereof since that time.

The record discloses that the route followed by the driveway is the most feasible route for travel from Edgecliff road to the garage of plaintiffs. This is because of the location of the Feldman improvements, and also to the contour of the surrounding land. It is not strictly a way of necessity, because another driveway could be constructed and located wholly upon plaintiffs' premises, but it is the most practical and convenient way. Construction of a new roadway would necessitate a steeper grade, require the destruction of some valuable trees, and make a decided change in the landscaping. It would require other substantial and expensive changes to be made, which it is not necessary to mention. The matter of grade is of considerable importance in the vicinity where this land is located, because of snow and ice conditions during the winter months.

The record discloses clearly that, ever since its original construction in 1927, this driveway has been openly and continuously used by the occupants of the Feldman residence as the only means of ingress to and egress from that tract of land, in common with the use thereof by the occupants of the Knapp tract. This was not a permissive use, but a use under a claim of right. It is plain that it was intended by the original owner of both tracts, Frances C. Zimmerman, who laid out and constructed the driveway, that its permanent use should be appurtenant to both parcels of land. It appears to us that no other reasonable conclusion can be drawn, when all the facts and circumstances of the case are considered. It was a permanent improvement that was perfectly apparent to all who might have occasion to observe it. The nature of its construction, the natural lines it followed, clearly indicated its intended use for the benefit of both properties. It

is obvious that Frances C. Zimmerman, when she constructed the driveway to serve her own home, did intend that it should serve that home permanently. Inasmuch as the other property was then owned by her son, it is reasonable to assume that she intended that his property should also be permanently served by the driveway. At no time was objection made to such use by the occupants of the Feldman tract by any owner of the Knapp tract, except the objection made by New York Life Insurance Company in September, 1933, in its letter to Frances C. Zimmerman, as to the contents of which letter Ralph Zimmerman testified as noted, supra; and except further, the objection made by the defendants Knapp on February 27, 1949, which objection, together with later objections and accompanying threats made by them, led to this litigation.

Plaintiffs by their complaint pray a decree that the easement of way across defendants' lands is a permanent servitude thereon appurtenant to and for the benefit of the lands of plaintiffs for the purpose of providing vehicular and foot travel access to plaintiffs' property, and for an injunction to restrain defendants and their successors in interest from in any manner obstructing or interfering with the use of said driveway by plaintiffs and their successors in interest.

Plaintiffs maintain that they have a permanent easement of way in this driveway that is appurtenant to their land on two grounds; viz., (1) by reason of adverse user for a period of more than 10 years continuously by themselves and their predecessors in interest; and (2) because of an implied easement arising out of all the facts and circumstances of the case.

In considering the question of adverse user, we

have accepted as true the above-mentioned testimony of Wilson Stuart Zimmerman as to his allegd conversation with Mr. MacMurray concerning an easement in the driveway. It will be recalled that this conversation occurred in 1933, shortly after Frances Zimmerman conveyed the Knapp tract to New York Life Insurance Company. For the same purpose, we also accept as true the testimony of Ralph Zimmerman as to the contents of the letter which he claimed was received by his mother in September, 1933, from Commonwealth, Inc., representing New York Life Insurance Company, concerning the use by Frances Zimmerman of the driveway in question.

We take this testimony as fixing the time in 1933 when adverse user commenced, if there was adverse user. Commencing, therefore, in September, 1933, the use of this driveway by Frances Zimmerman as a means of ingress to and egress from the Feldman tract was without the consent or permission, express or implied, of New York Life Insurance Company; in fact, it was against the will of said company. Neither did any subsequent owner of the Knapp tract give permission to the owners or occupants of the Feldman tract to use the driveway. There may have been, and perhaps was, acquiescence in such use by the owners of the Knapp tract, but acquiescence is not permission.

As we have heretofore noted, from September, 1933, until 1944, Frances Zimmerman continued as the owner of the Feldman tract, and from 1930 to 1940, the premises were rented and occupied by Mr. Wise, with the exception of one year when they were vacant while repairs were being made to the dwelling house, rendered necessary because of a fire that had destroyed a part thereof.

During the entire period of his occupancy of the

Feldman tract, Wise made daily use of the driveway. Though there is no direct evidence to that effect, nevertheless, it is reasonable to infer that, while the dwelling house was being repaired, necessary materials were transported over the driveway, and workmen used the driveway for travel to and from the place of their employment. There also is substantial evidence in the record to the effect that the use of the driveway by occupants of the Feldman tract was continuous during the entire time Frances Zimmerman continued in ownership. Witnesses living in the vicinity of the Feldman tract testified to this continuous use. And, of course, following the sale of the premises by Frances Zimmerman in 1944, continuous use of the driveway was made first by the Footes and then by plaintiffs. No objection whatever was made to this use by any owner of the Knapp tract following the objection made by New York Life Insurance Company in 1933, except as before noted respecting the objection made by defendants in February, 1949.

The evidence is almost conclusive that such user of the driveway by occupants of the Feldman tract over the entire period of time mentioned was continuous, open, visible, and peaceable, and that it was under a claim of right.

■ In *Coventon v. Seufert*, 23 Or 548, 550, 32 P 508, this court said:

> "It may be stated as a general proposition of law, that if there has been an uninterrupted user and enjoyment of an easement in a particular way for more than ten years, it affords a conclusive presumption of right in the party who shall have enjoyed it, provided the use be not by authority of law or by agreement with the owner of the inheritance: Washburn, Easem. 2 ed. 106; Tolman v. Casey, 15 Or. 83 (13 Pac. Rep. 669)."

At page 551, the court further stated:

"* * * This use and enjoyment affords a presumption of right in them which must prevail, unless the defendants can show that such possession was maintained by the license or indulgence of themselves, their grantors or predecessors."
And, at page 552, the court continued:

"* * * The burden of proving that plaintiffs held possession by license or indulgence was cast upon the defendants; * * *."

The above rule is well stated in *Burnham v. Burnham,* 130 Me 409, 411, 156 A 823, as follows:

"* * * There is no direct evidence in the case of any consent and the ordinary rule is that, where there has been an unmolested, open, and continuous use of a way for twenty years or more with the knowledge and acquiescence of the owner of the servient estate, the use will be presumed to have been adverse and under a claim of right and sufficient to create a title by prescription unless contradicted or explained."

The rule is stated in 17 Am Jur, Easements, 981, § 72, thus:

"* * * The prevailing rule is that where a claimant has shown an open, visible, continuous, and unmolested use of land for the period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under a claim of right. The owner of the servient estate, in order to avoid the acquisition of an easement by prescription, has the burden of rebutting this presumption by showing that the use was permissive."

In *Zollinger v. Frank,* 110 Utah 514, 175 P2d, 714, 170 ALR 770, 773, the Utah Supreme Court quotes and adopts the rule as stated in 17 Am Jur, Easements, 981, § 72, supra. To this case as reported in 170 ALR, commencing at page 776, is appended an exhaustive

note dealing with the subject "Easement by prescription: presumption and burden of proof as to adverse character of use." At page 779, the author of the note states the prevailing rule as follows: ·

> "* * * Upon its appearing that a servitude has been enjoyed during the period required for prescription, openly, continuously and uninterruptedly, a presumption arises, in the absence of any other explanation, that the user was adverse and under a claim of right. The burden is then upon the owner of the soil to show that the use was permissive, or otherwise that it was not adverse."

*Coventon v. Seufert,* supra, is cited in support of the prevailing rule. Also see *Bohrnstedt v. Scharen,* 60 Or 349, 119 P 337; *McDougal v. Lame,* 39 Or 212, 64 P 864.

■■ Under the facts and circumstances of this case a presumption arose that the user by plaintiffs and their predecessors in interest of this driveway was adverse and under a claim of right. There is no evidence in the record to rebut that presumption. The burden of proof was upon defendants to rebut the same if, in fact, it could be rebutted. Evidence of mere acquiescence in, as distinguished from permission for, such use on the part of the owners of the servient estate is insufficient for the purpose. In *Shepard v. Gilbert,* 212 Wis 1, 249 NW 54, the court said:

> "* * * It is our conclusion that neither friendship nor close social relations of the owner and initial user can be effective to rebut the presumption. Such evidence may indicate acquiescence, but it plainly falls short of proving a permission acted upon by Smith. *Mere acquiescence at the commencement of a use would not affect its adverse character.*" (Italics ours.)

In 17 Am Jur, Easements, 976, § 65, the rule is stated:

"The foundation of the establishment of a right by prescription is the acquiescence on the part of the owner of the servient tenement in the acts which are relied upon to establish the easement by prescription. This makes it necessary that he know of those acts, or be charged with knowledge of them if he did not in fact know of them. * * * It is presumed, however, that every man knows the condition and status of his land; and if anyone enters into open and notorious possession of an easement therein under claim of right, the owner is charged with knowledge thereof."

■■ To establish continuity of user for the statutory period of ten years, it is not necessary to show such use on each day throughout the period. It is necessary only to show that the claimant made such reasonable use of the way as his needs required. In 28 CJS, Easements, 649, § 13b, we find the rule stated as follows:

"The term 'continuous and uninterrupted use' has been defined as a use not interrupted by the act of the owner of the land or by voluntary abandonment by the party claiming the right; and it has been said that the correct rule, as to continuity of use to give a prescriptive right to an easement and what shall constitute such continuity, can be stated only with reference to the nature and character of the right claimed. However, in order that user may be considered continuous, it is not necessary that it should be constant, unless required by statute.

"Ordinarily, if whenever claimant needs it from time to time he makes use of it, and the acts constituting the user are of such nature and frequency as to give notice to the landowner of the right being claimed against him, the user will be considered continuous."

In 17 Am Jur, Easements, 972, § 60, it is said:

"* * * A failure to use an easement when not needed does not disprove a continuity of use shown by using it when needed. The uninterrupted and continuous enjoyment of a right of way necessary to constitute adverse possession does not require the use thereof every day for the statutory period, but simply the exercise of the right more or less frequently according to the nature of the use."

See also *Hesperia Land Etc. Co. v. Rogers,* 83 Cal 10, 23 P 196, 17 Am St Rep 209; *Bodfish v. Bodfish,* 105 Mass 317; Restatement, Property, 2935, § 459.

■ Exclusive use for the purpose of establishing a right in an easement by adverse user does not mean that such use shall be at the exclusion of a use by all others. Exclusive use under a claim of right requires only that the right claimed by the adverse user not be dependent upon the right of anyone else to use the way, and it may be established by common user with the servient owner and without any subjective claim of right. *Bowman v. Bradley,* 127 Or 45, 54, 270 P 919; Restatement, Property, 2924, § 458.

■ Though under the facts of this case adverse user by Frances Zimmerman for a continuous period of more than ten years prior to the time she conveyed the Feldman tract to Mr. and Mrs. Foote in 1944 is clearly established, yet, if necessary, the adverse users of successive owners in privity might be tacked to complete the prescriptive right. That would include the use by the Footes and by plaintiffs up to February 27, 1949. *Bonifacich et al. v. Cummings,* 111 Or 555, 561, 227 P 469; 17 Am Jur, Easements, 973, § 61; Restatement, Property, 2947, § 464.

■ Adverse user of an easement by a tenant inures to the benefit of his landlord in establishing a right by

prescription. In 32 Am Jur, Landlord and Tenant, 44, § 20, the rule is stated:

"Adverse use of an easement over the land of a third person by a tenant under his lease inures to the benefit of the landlord so as to support the latter's right to such easement by prescription."

■ We are of the opinion that, under the facts and circumstances of this case and the law applicable thereto, the plaintiffs have a permanent easement of way in and over the driveway located on defendants' premises that is appurtenant to their land. Their right is a prescriptive right established by adverse user for a continuous and uninterrupted period of more than ten years.

Defendants have invited our attention to a number of authorities that are in apparent disagreement with those to which we have directed attention. However, several of the authorities cited are cases dealing with the question of adverse possession of real property as the basis of acquiring title thereto. We are not concerned here with adverse possession of real property, but with adverse user of an easement of way over lands. The rules applicable to proving adverse possession are not in all respects the same as those applying to adverse user, and, therefore, cases dealing with the question of adverse possession are not directly in point in this suit. Among the cases cited by defendants are: *Reeves et al. v. Porta,* 173 Or 147, 144 P2d 493; *NcNear v. Guistin,* 50 Or 377, 92 P 1075.

■ Defendants also invite our attention to what this court said in *Parrott v. Stewart,* 65 Or 254, 261, 132 P 523, as authority for their contention that the rules applicable to establishing a prescriptive right to an easement of way are the same as those applying to the acquirement of title to real property by adverse pos-

session. That case involved a claim of the city of Baker, Oregon, to a right of use of land as a street by prescription or adverse use by the public continuously for the statutory period. This court said (as noted by defendants in their brief in the instant case) at page 261:

> "The adverse use which will give title by prescription to an easement is *substantially* the same in quality and characteristics as the adverse possession which will give title to real estate. As in the case of adverse possession, it must be continued for a long period; it must be adverse, under a claim of right, exclusive, continuous, uninterrupted and with the knowledge and acquiescence of the owner of the estate out of which the easement is claimed [Citing authorities]." (Italics ours.)

That is a correct statement of the law, but it lacks much of stating that the rules of evidence applicable to establishing adverse user of an easement of way are the same as those applicable to the establishment of title to real property by adverse possession. When title to real property is involved, no presumption of adverse possession arises from the character of the use over the statutory period that casts upon the owner of the land the burden of proof in showing the possession to have been permissive, or other than adverse, such as may be the case when an easement of way is claimed by adverse user. It is true that in both instances the possession or the use, as the case may be, must be actual, open, continuous, and adverse under a claim of ownership or claim of right. But the burden of proof resting upon a claimant does not shift in a case of adverse possession; whereas, the burden of proof, that is, the burden of going forward with the evidence, may shift in a case of adverse user.

In *Laurance et al. v. Tucker,* 160 Or 474, 484, 85 P2d

374, also cited by defendants, there is to be found some dicta respecting the law of adverse possession of land, and 1 RCL, Adverse Possession, 705, 706, § 18, is cited in support thereof. What is said correctly states the principles of law applicable to acquiring title to real property by adverse possession. However, the decision is no authority for a principle contrary to that announced in *Coventon v. Seufert,* supra.

■ Under the facts of this case an easement of way by adverse user was created and became complete as early as September, 1943, while the Feldman property remained in the ownership of Frances Zimmerman. It then became fixed as an appurtenance to the Feldman tract. It is immaterial, therefore, that no mention was specifically made of this appurtenance in the warranty deed executed by Frances Zimmerman in February, 1944, whereby she conveyed the premises to the Footes. Such warranty deed had the effect, in law, of conveying title to the whole of the Feldman tract, including all tenements, hereditaments, and appurtenances thereunto belonging. And the same is true respecting the deed from the Footes to plaintiffs. 16 Am Jur, Deeds, 602 § 290.

■ Before concluding, we invite attention to one item of evidence in the record which, in our opinion, establishes a recognition on the part of defendants of plaintiffs' easement of way in this driveway. On July 13, 1948, at the instance of defendants, certain repairs were made to the driveway surface. The cost thereof was $21.51, for which sum defendants were billed by the contractor who made the repairs. On July 15, 1948, defendants presented this bill to plaintiffs, and, on the same day, plaintiff Gus Feldman drew his check in the amount of $10.76, being one-half the total cost of the repairs, payable to J. B. Knapp, and de-

livered it to defendants. Knapp endorsed and cashed the check. On the face of the check at the time of delivery was written "(Driveway repair)".

The trial judge based his decree in favor of plaintiffs upon the theory of adverse user and, we believe, correctly so. Upon the conclusion of the trial, he stated in open court:

"Therefore, it will be the judgment of this court that the plaintiff will be adjudged to be the owner of the right by prescription in common with the owners of the northerly tract of property to use this driveway. I base that upon the period from June, particularly, from June 1933 to August of 1944, because I think it was in uninterrupted use by the owners of that southerly tract of property during that period of time, that that use was open."

The conclusion we have reached renders unnecessary any discussion of the further claim of plaintiffs that, under all the facts and circumstances of this case, they have an implied easement of way in this driveway.

The decree is affirmed.