Argued and submitted September 21, 1981,
affirmed February 22, 1982

# HANSCAM et ux,
*Appellants,*

*v.*

# SOUSA et ux,
*Respondents.*

## (No. C80-6-84, CA 19918)

641 P2d 86

John C. Babin, Brookings, argued the cause for appellants. With him on the briefs was Coutrakon, Hoselton & Babin, Brookings.

David W. Hittle, Salem, argued the cause for respondents. With him on the briefs was Olson, Hittle, Gardner & Evans, Salem.

Before Gillette, Presiding Judge, Young, Judge, and Roberts, Judge Pro Tempore.

YOUNG, J.

**YOUNG, J.**

This is an action to enjoin a continuing trespass on real property. Defendants claimed an easement by prescription to use a driveway on plaintiffs' land. The trial court found for the defendants, and plaintiffs appeal.[1] We review *de novo* and affirm.

The evidence is not in dispute. In 1947, plaintiffs constructed a driveway on their property for access to their home. The driveway was along the north boundary of plaintiffs' property and connected with a public road known as Grootendorst Lane. In 1951, plaintiffs gave permission to their friend Foster to use the driveway to enable him to haul building material to his property to build a home. After the home was completed, Foster continued to use the driveway.[2] After Foster received the initial permission, there were no further discussions with plaintiffs about his continued use of the driveway.[3]

In 1964, Foster sold his property to Wood. Wood mistakenly assumed that an easement described in the deed from Foster across the "Davis" land was the driveway on plaintiffs' land. When Wood purchased from Foster, the driveway was in poor condition. Wood kept the driveway graded and graveled until 1973, when the driveway was blacktopped, for which Wood furnished equipment and rock. The paving cost was shared between the then users of the driveway, namely plaintiffs, their relatives and Wood. Wood built a carport prior to the paving that was only accessible from the driveway. Plaintiffs and Wood never discussed the use or ownership of the driveway.

In 1978, Wood sold the property to defendants. Defendants, like their predecessor, incorrectly assumed the

---

[1] The decree grants to "plaintiffs" an easement on plaintiffs' property. We treat that as a scrivener's error.

[2] Plaintiffs lived on their property until 1957, when they sold their home and a portion of the real property to relatives. The deed from plaintiffs to the relatives included the grant of an easement to use the driveway. The land which plaintiff retained continued to be served by the driveway and was used by plaintiffs on an irregular basis for access to the retained portion of the property.

[3] When Foster acquired his property, his deed included the grant of an easement 15 feet wide and 130 feet in length from Grootendorst Lane, across what is known as the "Davis" land to the east line of the Foster property. The easement runs parallel to and within a few feet of plaintiffs' driveway. That easement was unimproved and impassable. It was never opened or used.

driveway was the "Davis" easement described in their deed from Wood. In 1980, plaintiffs told defendants they had no right to use the driveway.

It is clear from the foregoing that plaintiffs initially gave Foster permission to use the driveway. Thereafter, defendants and their predecessor Wood used the driveway with plaintiffs' silent acquiescence under a mistaken belief that the driveway was the easement described in their respective deeds.

Plaintiffs argue that defendants did not meet their burden of proving adverse use. They maintain that defendants' and their predecessors' use of the driveway was permissive and was not made under a claim of right. Plaintiffs misconstrue the nature of the relationship. By granting Foster permission to use the driveway to transport building materials and by acquiescing in his continued use, plaintiffs gave him a license to use the driveway. The right conferred by a license is a personal right and is normally not assignable. *Strandholm v. Barbey,* 145 Or 427, 26 P2d 46 (1933); *Tarlow v. Arnston,* 264 Or 294, 505 P2d 338 (1972); 2 Thompson on Real Property § 710 (1939); 3 Tiffany, Real Property § 829 (1939).

■ ■ There was no evidence that anyone intended the license to be assignable. Consequently, the license was revoked when Foster sold his property to Wood. 3 Tiffany, Real Property § 817 (1939). The use by Wood, following termination of the Foster license, was then capable of ripening into an easement by prescription. Accordingly, we must examine the character of Wood's use of the driveway beginning in 1964.

■ The evidence is clear that Wood's use was open, notorious, continuous and uninterrupted for a period of more than ten years. The dispositive question is whether defendants carried their burden of proving an adverse use. *Thompson v. Schuh,* 286 Or 201, 203, 593 P2d 1138 (1979). The fact that Wood's and defendants' use of the driveway was based on a mistaken belief is nonetheless sufficient to prove hostile intent. *Rider v. Pottratz,* 246 Or 454, 456, 425 P2d 766 (1967); *City of Ashland v. Hardesty,* 23 Or App 523, 543 P2d 41 (1975). Wood's belief evidences a claim of

right, for his use involved no recognition of a superior right to the driveway in plaintiffs.

■ There was no evidence that plaintiffs expressly gave Wood permission to use the driveway. It is uncontested that from the time Wood acquired the property in 1964, until he sold it in 1978, plaintiffs never spoke to him about the use or ownership of the driveway. Plaintiffs' acquiescence in the use does not amount to permission. *Feldman v. Knapp,* 196 Or 453, 474, 250 P2d 92 (1952).

The evidence shows that Wood's use of the driveway for the prescriptive period was never in subordination to the plaintiffs' rights. As the trial judge stated, Wood's actions were a "flag" to plaintiffs that Wood's use of the driveway was adverse to them.

Affirmed.